IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION



| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| V. | § | CAUSE NO. 1:17-CR-76-LY |
| | § | |
| SELVIN BUSTILLO-ROMERO | § | |

## MEMORANDUM OPINION AND ORDER

Before the court in the above-styled and numbered cause are Defendant's Motion to Dismiss filed October 2, 2018 (Dkt. No. 21); Supplement to Defendant's Motion to Dismiss filed October 9, 2018 (Dkt. No. 24); Government's Response in Opposition to Defendant's Motion to Dismiss the Indictment filed November 2, 2018 (Dkt. No. 25); and Government's Notice of Supplemental Authority filed November 26, 2018 (Dkt. No. 26). On November 30, 2018, the court conducted a hearing at which all parties were represented by counsel. Having considered the motion, response, attached exhibits, supplemental authority, applicable law, and the arguments of counsel, the court will deny the motion for the reasons to follow.

### I. BACKGROUND

On February 3, 2017, Bustillo-Romero was indicted on one count of illegal reentry into the United States. *See* 8 U.S.C. § 1326(a). Bustillo-Romero, a citizen of Honduras, was initially apprehended by federal law enforcement on February 3, 2014. While in immigration custody, on February 3, 2014, Bustillo-Romero was served in person with a United States Department of Homeland Security form titled "Notice to Appear." The form notice states that Bustillo-Romero is subject to removal because he is "an alien present in the United States who has not been admitted or paroled." The notice informed Bustillo-Romero,

> YOU ARE ORDERED to appear before an immigration judge of the United
> States Department of Justice at: 800 Dolorosa Street Suite 300 San Antonio TX
> 78207, EOIR San Antonio, TX on (Date) to be set, at (Time) to be set, to show

why you should not be removed from the United States based on the charge set above.

The certificate-of-service portion of the notice indicates that Bustillo-Romero was provided with "oral notice in the Spanish language of the time and place of his [] hearing and of the consequences of failure to appear." Immediately above the certificate of service, Bustillo-Romero signed a request for an expedited removal hearing and waived his right to a 10-day waiting period before appearing before an immigration judge. The record does not include evidence that Bustillo-Romero was ever personally served with a written notice of hearing containing the time and place of the hearing, though the Government asserts that "detained inmates are generally provided with written or oral notice of the hearing."[1] On February 21, 2014, Bustillo-Romero bonded out of the detention facility.

Removal proceedings occurred on October 3, 2014, and "upon the basis of respondent's [Bustillo-Romero's] admissions" an immigration judge ordered Bustillo-Romero removed from the United States. The order of removal, signed October 3, 2014, indicates that Bustillo-Romero was personally served with a copy of the order the same day. Although the record does not contain a signed waiver of appeal, "Appeal: Waived" is indicated at the end of the removal order. Bustillo-Romero was removed from the United States on October 10, 2014.

The October 3, 2014 removal order was reinstated on January 8, 2016.[2] Bustillo-Romero came to the attention of federal law-enforcement authorities on December 11, 2016, after he was arrested for driving while intoxicated in Austin, Texas. The charge at issue followed when a

---

[1] At the hearing on the motion, the court asked Bustillo-Romero's counsel several times whether there was evidence that Bustillo-Romero received (i) actual notice of the hearing; or (ii) a written notice of hearing that included the date and time of the hearing. Counsel declined to answer the question, did not enter any further evidence in the record, and conceded that Bustillo-Romero was present at his removal hearing.

[2] The record does not reflect the basis upon which the removal order was reinstated.

2

grand jury returned an indictment on February 21, 2017, for illegal reentry. *See* 8 U.S.C. § 1326(a). The October 3, 2014 removal order is the basis for the instant indictment.

In order to prove illegal reentry, the Government must prove that Bustillo-Romero "has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding." *Id.* The lawfulness or validity of a prior removal order is not an element of an illegal-reentry offense, and the Government need only prove the fact of a prior removal. *United States v. Mendoza-Lopez*, 481 U.S. 828, 834–35 & n. 9 (1987). The only statutory defense available to a defendant charged with illegal reentry into the United States is a collateral attack on the defendant's prior removal order. *See* 8 U.S.C. § 1326(d) ("1326(d)").

## II. LEGAL STANDARD

A criminal defendant may allege a defect in an indictment in a pretrial motion. *See* Fed. R. Crim. P. 12(b)(3)(B). An indictment must contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "[A] motion to dismiss an indictment for failure to state an offense is a challenge to the sufficiency of the indictment." *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004). When the court decides such a motion, it is required to "take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998).

> The propriety of granting a motion to dismiss an indictment . . . by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact . . . . If a question of law is involved, then consideration of the motion is generally proper.

*United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (internal citation omitted).

3

## III. ANALYSIS

### a. Did the immigration court lack jurisdiction to render removal order?

Bustillo-Romero first argues that the immigration court was without jurisdiction to enter the 2014 removal order, thus, as a matter of law, the current indictment lacks a sound basis, and this prosecution cannot continue.

Although the Constitution and governing statutes lack any reference to the jurisdiction of an immigration court, Bustillo-Romero contends that, primarily based upon language in *Pereira v. Sessions*, the immigration court lacked jurisdiction to enter the October 3, 2014 removal order, because the notice to appear given to Bustillo-Romero on February 3, 2014, was statutorily deficient—the notice failed to include a time at which the removal proceedings would be held.[3] __ U.S. __, 138 S. Ct. 2105 (2018) (considering Section 1229(a) requirements for notice to appear in context of Section 1229b, request to cancel removal proceedings, and stop-time rule[4]); 8 U.S.C. § 1229(a)(1)(G)(i) (notice to appear given to alien shall include "time and place at which the proceedings will be held"). Bustillo-Romero contends that the removal order resulting from the October 3, 2014 immigration removal proceeding was void and cannot now be used as a basis for of his illegal-reentry offense.

Bustillo-Romero's contention is not novel. Illegal-reentry defendants around the country, relying on language in *Pereira v. Sessions*, have filed similar motions to dismiss the

---

[3] The court presumes that *time* requires the inclusion of a date. *See* 8 U.S.C. § 1229(a)(1)(G)(i).

[4] A noncitizen requesting that an immigration court cancel removal proceedings must show, *inter alia*, continuous presence in the United States for ten years. *See* 8 U.S.C. § 1229b(b)(A). If the noncitizen is "served a notice to appear under section 1229(a)" initiating removal proceedings, then the noncitizen's continuous presence in the United States is stopped as of the date the Section 1229(a) notice is served to the noncitizen. *See id.* at § 1229b(d)(1). This statutory stopping of time, referred to as the "stop-time rule," is discussed later in this opinion.

4

Government's charges against them. The motions usually raise the same two contentions and similarly argue that based on a statutorily-deficient notice to appear, which fails to inform the defendant in writing of the scheduled time for the removal proceedings, the immigration court entering the initial removal order lacked jurisdiction to issue such an order. Thus, the initial removal order is void, and the subsequent indictment for illegal reentry must be dismissed. Courts presented with this issue have not spoken with one voice.[5] This court has made an effort to review all decisions issued as of the date of this order in considering the motion.

The *Pereira* Court considered a similar statutorily-deficient notice to appear, but not in the context of an attack on an initial removal order in an illegal-reentry prosecution. The *Pereira* Court was presented with a direct appeal from a Board of Immigration ruling and the Court of

---

[5] Several courts, including courts in this district and division, have concluded that a statutorily deficient notice to appear does not vest an immigration judge with jurisdiction and dismissed the indictment without a Section 1326(d) analysis. *See e.g.*, *United States v. Santiago Tzul*, Cause No. 4:18-CR-521-KPE, 2018 WL 6613348 (S.D. Tex. Dec. 4, 2018), *notice of appeal filed*, 18-20802 (Dec. 6, 2018); *United States v. Alfredo-Valladares*, Cause No. 1:17-CR-156-SS, 2018 WL 6629653 (W.D. Tex. Oct. 30, 2018), *notice of appeal filed*, 18-50953 (Nov. 1, 2018); *United States v. Pedroza-Rocha*, Cause No. 3:18-CR-1286-DB, 2018 WL 6629649 (W.D. Tex. Sept. 21, 2018), *notice of appeal filed*, 18-50828 (Oct. 2, 2018); *United States v. Virgen-Ponce*, 320 F. Supp. 3d 1164 (E.D. Wash. 2018). Some courts have concluded that although a statutorily deficient notice to appear does not properly vest an immigration judge with jurisdiction, the defendants must nonetheless satisfy the requirements of Section 1326(d). *See e.g.*, *United States v. Francisco Hernandez-Lopez*, Cause No. 5:18-CR-625(1)-DAE, 2018 WL 6313292 (W.D. Tex. Dec. 3, 2018) (assuming without deciding jurisdictional arguments and holding defendant was not entitled to relief under Section 1326(d)); *United States v. Gerardo Sandoval-Cordero*, Cause No. 3:18-CR-2370-KC, 2018 WL 6253251 (W.D. Tex. Nov. 29, 2018) (defendant did not satisfy Section 1326(d)); *United States v. Margarito Zapata-Cortinas*, Cause No. 5:18-CR-343-OLG, 2018 WL 6061076 (W.D. Tex. Nov. 20, 2018) (same); *United States v. Lopez-Urgel*, Cause No. 1:18-CR-310-RP, 2018 WL 5984845 (W.D. Tex. Nov. 14, 2018), *notice of appeal filed*, 18-50970 (Nov. 15, 2018) (defendant satisfied Section 1326(d)). Other courts have concluded that a statutorily deficient notice to appear does not affect the jurisdiction of an immigration judge and that a defendant must satisfy Section 1326(d). *See e.g.*, *United States v. Saravia-Chavez*, Cause No. 3:18-CR-16-NKM, 2018 WL 5974302 (W.D. Va. Nov. 14, 2018) (defendant did not satisfy 1326(d)); *United States v. Ramos-Delcid*, Cause No. 3:18-CR-20-NKM, 2018 WL 5833081 (W.D. Va. Nov. 7, 2018), *notice of appeal filed*, 18-4859 (Nov. 28, 2018) (defendant removed *in abstentia* satisfied Section 1326(d)).

Appeals for the First Circuit regarding a noncitizen's request for cancellation of removal proceedings.

Noncitizens subject to removal proceedings may be eligible for cancellation of removal proceedings if they have been physically present in the United States for a continuous period of 10 years immediately preceding the date of the Government's request for removal. 8 U.S.C. § 1229b(b)(1)(A). Under this "stop-time rule,"[6] the period of continuous presence ends when the Government serves the noncitizen with a notice to appear under section 1229(a). 8 U.S.C. § 1229b(d)(1) (special rules relating to continuous residence or physical presence: "[f]or purposes of this section, any period of continuous residence or continuous physical presence in the United States shall be deemed to end . . . when the alien is served a notice to appear under section 1229(a) of this title"). The date the Government serves the noncitizen with a Section 1229(a) notice to appear at a removal proceeding stops the noncitizen's continuous presence in the United States.

Pereira, a citizen of Brazil who had been present in the United States for several years, was served with a notice to appear stating that his removal proceeding would occur on a date and time "to be set." *Pereira*, 138 S. Ct. at 2112. Ahead of the removal hearing, the immigration court sent Pereira a notice of hearing with the date and time for the hearing, but the notice was mailed to the wrong address. *Id.* Without information about when the hearing would occur, Pereira failed to appear at the removal proceedings. The immigration court proceeded with the hearing and ordered *Pereira* removed *in abstentia*. *Id.*

Several years later, Pereira was arrested and his removal proceedings reopened. *Id.* At that time, Pereira applied for a cancellation of the removal proceeding under Section 1229b, which the immigration court denied. *Id.* Periera timely appealed the decision to the Board of

---
[6] *See supra* note 4.

Immigration Appeals and then filed an appeal to the First Circuit; both appeals were denied. *Id.* at 2113–14. On direct appeal from the First Circuit, the Supreme Court considered whether Pereira's notice to appear, which lacked the time and place of removal proceedings, was an adequate notice to appear under Section 1229(a) that would trigger the statutory stop-time rule provided in Section 1229b(d). *Id.* at 2110.

The Court held that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under [Section] 1229(a),' and so does not trigger the stop-time rule." *Id.* at 2113–14. The Court reasoned that the time-and-place requirement is "definitional" for a document that purports to be a notice to appear and that "the omission of time-and-place information is not, as the dissent asserts, some trivial, ministerial defect, akin to an unsigned notice of appeal. . . . Failing to specify integral information like the time and place of removal proceedings unquestionably would 'deprive [the notice to appear] of its essential character.'" *Id.* at 2116–17. "The plain text, the statutory context, and common sense all lead inescapably and unambiguously to that conclusion." *Id.* at 2110.

The parties now dispute how language in *Pereira* regarding a notice to appear applies in a context other than a direct appeal from an immigration-court ruling in cancellation-of-removal proceedings and the application of the stop-time rule. Issue is joined as to what effect, if any, *Pereira's* language regarding notices to appear applies in illegal-reentry prosecutions where, as here, the underlying notice to appear provided to the noncitizen and filed with the immigration court fails to specify the time and date of the removal proceedings.

The primary argument that Bustillo-Romero advances is that the immigration judge lacked jurisdiction to enter the underlying October 3, 2014 removal order, because the statutorily

7

deficient notice to appear prevented *jurisdiction* from ever vesting in the immigration court. Bustillo-Romero contends that "removal proceedings commence," and *jurisdiction* vests, in the immigration court only upon the filing of a notice to appear that complies with Section 1229(a) and *Pereira*—that is, a notice to appear that includes time-and-place information for removal proceedings.

This court recognizes the Supreme Court's holding in *Pereira*—in the context of the stop-time rule—that a "notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under [Section] 1229(a),' and so does not trigger the stop-time rule." 138 S. Ct. at 2113–14. Nonetheless, this court observes and finds significant that neither Section 1229, which, *inter alia*, details the contents of a notice to appear, nor *Pereira* makes any reference to an immigration court's jurisdiction. The court finds nothing in the applicable statutory provisions or in *Pereira* expressly providing that a defective notice to appear leaves an immigration court without jurisdiction to conduct removal proceedings. Nor is there an express indication in *Pereira* or the applicable statutes that a statutorily defective notice to appear, standing alone, leaves an immigration court without the power to proceed with removal proceedings.

The court respectfully disagrees with district courts that have determined in the context of a criminal prosecution for illegal reentry that a statutorily defective notice to appear—one that lacks the time and date of removal proceedings—renders an immigration court without jurisdiction to conduct removal proceedings and issue an order of removal.

"Characterizing a rule as jurisdictional renders it unique in our adversarial system," and the Supreme Court has cautioned against "profligate use of the label 'jurisdictional.'" *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013). Unless Congress has "clearly state[d]" that a

rule is jurisdictional, "courts should treat the restriction as nonjurisdictional in character." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515–16 (2006). In drawing the line between jurisdictional and nonjurisdictional, the Supreme Court distinguishes between a provision that "speak[s] to a court's authority" in contrast with a provision that speaks "to a party's procedural obligations." *Environmental Prot. Agency v. EME Homer City Generation, L.P.*, 572 U.S. 489, 512 (2014).

Moreover, courts should not reflexively extend to agencies the "very real division between the jurisdictional and nonjurisdictional that is applicable to courts." *City of Arlington, Tex. v. Federal Commc'n Comm'n*, 569 U.S. 290, 297 (2013). In the Article III context, "there *is* a meaningful line: Whether the court decided *correctly* is a question that has different consequences from the question whether it had the power to decide *at all*." *Id.* (emphasis in original). The Supreme Court explains:

> [t]hat is not so for agencies charged with administering congressional statutes. Both their power to act and how they are to act is authoritatively prescribed by Congress, so that when they act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires. Because the question—whether framed as an incorrect application of agency authority or an assertion of authority not conferred—is always whether the agency has gone beyond what Congress has permitted it to do, there is no principled basis for carving out some arbitrary subset of such claims as "jurisdictional."

*Id.* at 297–98. "[T]he difference explains why a litigant in federal district court *cannot* forfeit a challenge to subject matter jurisdiction, but a petitioner attacking agency action *can* forfeit a challenge to agency jurisdiction." *Campos-Luna v. Lynch*, 643 F. App'x 540, 542–43 (6th Cir. 2016) (emphasis in original). Because the pertinent inquiry in the agency context is the scope of its authority conferred by Congress, the court turns first to an analysis of the relevant statutory provisions—Section 1229 and 1229a.

Like other non-Article III bodies, immigration judges derive their authority from Congress. Proceedings to remove certain noncitizens are governed by Title 8 of the United States Code, Sections 1229 and 1229a. *See* 8 U.S.C. §§ 1229, 1229a. Section 1229a provides immigration judges with the authority to conduct removal proceedings and prescribes the statutory minimum of the form of such removal proceedings. *See id.* § 1229a(a)(1) ("An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien."). Under 1229(a), removal proceedings are initiated by the service of a notice to appear on the noncitizen. A notice to appear provides, *inter alia*, important information such as the charges against the noncitizen and the time and place at which removal proceedings will be held. More specifically, Section 1229 provides that in all removal proceedings conducted under Section 1229a:

> [W]ritten notice (in this section referred to as a "notice to appear") shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any) specifying the following:
>
> **(A)** The nature of the proceedings against the alien.
>
> **(B)** The legal authority under which the proceedings are conducted.
>
> **(C)** The acts or conduct alleged to be in violation of law.
>
> **(D)** The charges against the alien and the statutory provisions alleged to have been violated.
>
> **(E)** The alien may be represented by counsel and the alien will be provided (i) a period of time to secure counsel under subsection (b)(1) and (ii) a current list of counsel prepared under subsection (b)(2).
>
> **(F)(i)** The requirement that the alien must immediately provide (or have provided) the Attorney General with a written record of an address and telephone number (if any) at which the alien may be contacted respecting proceedings under section 1229a of this title.

> **(ii)** The requirement that the alien must provide the Attorney General immediately with a written record of any change of the alien's address or telephone number.
>
> **(iii)** The consequences under section 1229a(b)(5) of this title of failure to provide address and telephone information pursuant to this subparagraph.
>
> **(G)(i)** *The time and place at which the proceedings will be held.*
>
> **(ii)** The consequences under section 1229a(b)(5) of this title of the failure, except under exceptional circumstances, to appear at such proceedings.

8 U.S.C. § 1229(a)(1) (emphasis added). Section 1229 also provides the Government with an opportunity to change or postpone the time and place of removal proceedings, should the need arise. *Id.* at § 1229(b)(1).

The statutory provisions governing removal proceedings do not reference jurisdiction. Additionally, nothing in Section 1229 "clearly states" that a notice to appear impacts an immigration judge's underlying authority to conduct removal proceedings. *Arbaugh*, 546 U.S. at 515. Absent such a clear statement from Congress, the court concludes that a notice to appear is not of jurisdictional consequence.

This court concludes there is no jurisdictional issue in this case. The basis for this conclusion is the court's finding of an absence of a clear statement by Congress that strict compliance with the 1229(a) provisions for a notice to appear is jurisdictional or that such strict compliance has any impact on the immigration court's power to conduct removal proceedings. The court further finds no statutory language providing that giving a noncitizen a statutorily-defective notice to appear compels the automatic dismissal of charges in a later criminal prosecution for illegal reentry.

Bustillo-Romero argues that "not just anything qualifies as a notice to appear." Bustillo-Romero weaves together notice-to-appear requirements under Section 1229(a), *Pereira's*

11

application of the statutory notice-to-appear provision in the context of a request for cancellation of removal proceedings and application of the stop-time rule, and agency regulations—particularly the agency regulation that expressly references the jurisdiction of the immigration court—to argue that absent a statutorily compliant notice to appear, the immigration court lacks any power to proceed with removal proceedings. 8 C.F.R. § 1003.14(a) (agency regulation providing "jurisdiction vests, and proceedings before an immigration judge commence," when charging document is filed with immigration court).[7]

The court concludes that Bustillo-Romero's argument that the immigration court lacked jurisdiction to render the October 3, 2014 removal order is without merit. The record reflects that under the applicable regulations, the notice to appear was properly filed with the immigration court; therefore, the immigration court acted within its agency power in conducting removal proceedings.

Other courts addressing similar motions in illegal-reentry prosecutions have determined that based on the language in *Pereria*, the provisions of Section 1229 are definitional; therefore, absent strict compliance, an immigration court lacks jurisdiction or power to conduct removal proceedings, and any removal order so rendered was void.[8] To the contrary, the court finds absent in the applicable statutes any clear statement by Congress that the provisions of Section 1229 regarding notices to appear, in the context of illegal-reentry prosecutions, are jurisdictional or have any effect on the immigration court's power to act. The court concludes that the Section

---

[7] The only explicit reference to jurisdiction appears in this agency regulation and not a statute passed by Congress.

[8] *See United States v. Santiago Tzul*, Cause No. 4:18-CR-521-KPE, 2018 WL 6613348 (S.D. Tex. Dec. 4, 2018), *notice of appeal filed*, 18-20802 (Dec. 6, 2018); *United States v. Alfredo-Valladares*, Cause No. 1:17-CR-156-SS, 2018 WL 6629653 (W.D. Tex. Oct. 30, 2018), *notice of appeal filed*, 18-50953 (Nov. 1, 2018); *United States v. Pedroza-Rocha*, Cause No. 3:18-CR-1286-DB, 2018 WL 6629649 (W.D. Tex. Sept. 21, 2018), *notice of appeal filed*, 18-50828 (Oct. 2, 2018); *United States v. Virgen-Ponce*, 320 F. Supp. 3d 1164 (E.D. Wash. 2018).

1229(a) contents of the notice to appear are procedural obligations and do not affect the immigration court's power to hold removal proceedings.

Congress expressly provides Bustillo-Romero with the opportunity to raise due-process claims and collaterally attack the October 3, 2014 removal order by way of Section 1326(d).

### b. Collateral attack on underlying removal order, Section 1326(d)

Bustillo-Romero's second argument raises a collateral attack on the October 3, 2014 removal order under Section 1326(d). A defendant charged with illegal reentry in violation of Section 1326 has a due-process right to challenge the removal order upon which the charge is predicated in the criminal proceeding before the district court. *See Mendoza-Lopez*, 481 U.S. at 837–38. To collaterally attack a prior removal order in an illegal-reentry prosecution, a noncitizen must demonstrate that "(1) the removal hearing was fundamentally unfair; (2) the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the order; and (3) the procedural deficiencies caused the alien actual prejudice." *United States v. Lopez-Ortiz*, 313 F.3d 225, 229 (5th Cir. 2002) (citing *United States v. Lopez-Vasquez*, 227 F.3d 476, 483 (5th Cir. 2000)). To show actual prejudice, the noncitizen must show that "'there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported.'" *Lopez-Vasquez*, 227 F.3d at 485 (quoting *United States v. Benitez-Villafuerte*, 186 F.3d 651, 658–59 (5th Cir. 1999)). "If the alien fails to establish one prong of the three-part test, the court need not consider the others." *United States v. Cordova–Soto*, 804 F.3d 714, 719 (5th Cir. 2015) (quoting *United States v. Mendoza–Mata*, 322 F.3d 829, 832 (5th Cir. 2003)).

The Fifth Circuit regards the test as "effectively codified" in Section 1326(d). *Benitez–Villafuerte*, 186 F.3d at 658 n.8.[9]

Section 1326(d) provides:

In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that–

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).

Section 1326(d) is categorical: it states that a noncitizen "may not challenge the validity of the deportation order . . . unless" he can satisfy the requirements of subsection d. Further, Section 1326(a) prosecution is not limited to those cases in which the underlying removal was "lawful." *See Mendoza-Lopez*, 481 U.S. at 834–35 (considering whether Section 1326 permits challenge to lawfulness of underlying removal order, holding "the language of the [Section 1326] suggests no such limitation"). Thus, Bustillo-Romero must satisfy all three requirements of Section 1326(d).

Following a review of the record, the court concludes that Bustillo-Romero fails to satisfy any of the requirements of Section 1326(d). As more specifically addressed below, the court finds that Bustillo-Romero was not deprived of the opportunity for judicial review, did not

---

[9] Section 1326 does not expressly require a showing of "actual prejudice." Although this court is bound by the Fifth Circuit's interpretation of Section 1326, Bustillo-Romero "preserves for further review whether he must show actual prejudice."

14

exhaust his administrative remedies, and did not suffer "actual prejudice" as defined by the Fifth Circuit. *See Benitez-Villafuerte*, 186 F.3d at 658.

### 1. Exhaustion of administrative remedies

Bustillo-Romero contends that he was not required to exhaust his administrative remedies because the remedies are "inadequate, inefficacious, or futile . . . or [] the administrative proceedings themselves are void." The general rule is that a court may not excuse administrative exhaustion when it is required by statue. *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("Where Congress specifically mandates, exhaustion is required."). However, the Fifth Circuit recognizes some limited exceptions to this rule, such as where "resort to the agency would be futile because the challenge is one that the agency has no power to resolve in the applicant's favor." *See Goonsuwan v. Ashcroft*, 252 F.3d 383, 389 (5th Cir. 2001) (quoting *Sousa v. I.N.S.*, 226 F.3d 28, 32 (1st Cir. 2000)).

Bustillo-Romero does not argue that the Board of Immigration Appeals or the Fifth Circuit lacked the power or authority to determine that his notice to appear was deficient, and it is unlikely that either would have concluded that his notice to appear was deficient under controlling precedent at the time. *See Matter of Camarillo*, 25 I. & N. Dec. 644, 651 (BIA 2011); *Gomez-Palacios v. Holder*, 560 F.3d 354, 359 (5th Cir. 2009) ("[notice to appear] need not include the specific time and date of a removal hearing in order for the statutory notice requirements to be satisfied; that information may be provided in a subsequent [notice of hearing]."). Although controlling precedent may have precluded success on appeal, Bustillo-Romero's belief "that an appeal would fail does not make the opportunity 'unavailable' or excuse failure to use the procedure." *United States v. Larios-Buentello*, 807 F.3d 176, 177–78 (7th Cir. 2015). Because Bustillo-Romero did not exhaust his administrative remedies and does

15

not meet the exceptions to this requirement, the court concludes that he has failed to satisfy the requirement of Section 1326(d)(1).

### 2. Opportunity for judicial review

Although the Fifth Circuit has not determined the precise contours of when a removal proceeding "deprives" a defendant of "the opportunity for judicial review" to challenge defects in the proceeding, the Supreme Court has determined that a noncitizen was denied judicial review because the immigration judge "permitted waivers of the right to appeal that were not the result of considered judgments . . . and failed to advise [them] properly of their eligibility to apply for suspension of deportation." *Mendoza-Lopez*, 481 U.S. at 840. "[A] valid waiver of the right to appeal a deportation order precludes a later collateral attack." *United States v. Garza-Sanchez*, 217 F.3d 806, 808 (9th Cir. 2000); *see also United States v. Cerna*, 603 F.3d 32, 38 (2d Cir. 2010) (holding "knowing and voluntary" waiver of appeal rights will "bar collateral attack on the [deportation] order in a subsequent illegal reentry prosecution under [Section] 1326(d)"). However, a defendant's choice "not to make the attempt" to gain access to the courts and challenge the flaws with the underlying removal "does not mean that [the defendant] was deprived of all avenues of judicial review of [the] removal order." *United States v. Roque-Espinoza*, 338 F.3d 724, 729–30 (7th Cir. 2003).

Bustillo-Romero does not argue that he was deprived of judicial review. Instead, Bustillo-Romero argues that he need not "show that the removal proceedings improperly deprived him of judicial review." Bustillo-Romero provides no supporting authority for this assertion, however, and in the absence of such authority, this court will not set aside the statutory requirement that the noncitizen be deprived of the opportunity for judicial review. *See* 8 U.S.C. §1326(d)(2).

The court finds that Bustillo-Romero fails to show that he was deprived of the opportunity for judicial review. The order of removal indicates that Bustillo-Romero waived his right to appeal the order, and Bustillo-Romero did not, in fact, appeal the order. As such, the court concludes that Bustillo-Romero did not meet his burden in showing that the defective notice to appear deprived him of judicial review required by Section 1326(d)(2).

### 3. Fundamental unfairness and actual prejudice

Bustillo-Romero must also show that the entry of his removal order was "fundamentally unfair." 8 U.S.C. § 1326(d)(3). "Fundamental fairness is a question of procedure." *United States v. Lopez-Ortiz*, 313 F.3d 225, 230 (5th Cir. 2002). Because removal proceedings are civil rather than criminal in nature, "procedural protections afforded to an alien in removal proceedings are less stringent than those available to a criminal defendant." *Id.* For removal hearings, "due process requires that an alien who faces deportation be provided (1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard." *Id.* (citing *Kwong Hai Chew v. Colding*, 344 U.S. 590, 597–98 (1953)).

"For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.'" *Fuentes v. Shelvin*, 407 U.S. 67, 80 (1972) (quoting *Baldwin v. Hale*, 68 U.S. 223, 233 (1863)). To be sure, "due process is flexible and calls for such procedural protections as the particular situation demands," *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972), but due process requires, at a minimum, adequate notice. Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their

objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). As the Supreme Court aptly noted, "common sense" tells us that "[c]onveying time-and-place information to a noncitizen is an essential function of a notice to appear." *Pereira*, 138 S. Ct. at 2115.

Bustillo-Romero argues only that the removal order is fundamentally unfair because it was rendered by an immigration court lacking jurisdiction to remove him, an argument this court expressly rejects. Under the facts of this case, it is undisputed that the notice to appear delivered to Bustillo-Romero does not comply with Section 1229(a) because it does not include time-and-place information required by the statute. Although there is no evidence that Bustillo-Romero received actual notice or a written notice of the time and place of the removal hearing, he concedes that he was present at his removal hearing. The court concludes that Bustillo-Romero was not deprived of the opportunity to be heard at a meaningful time and in a meaningful manner. The Certificate of Service for the Notice to Appear states that "[Bustillo-Romero] was provided oral notice in the Spanish language of the time and place of his . . . hearing." Removal proceedings took place on October 3, 2014, and "upon the basis of respondent's admissions" an immigration judge ordered Bustillo-Romero's removal by order dated October 3, 2014, stating that Bustillo-Romero waived his right to appeal and was personally served with a copy of the order on October 3, 2014. Although the Government may have, at the outset, violated Section 1229(a), the court concludes that the noncompliance does not rise to the level of a due-process violation that rendered the proceedings fundamentally unfair.

Moreover, Bustillo-Romero cannot show that he was actually prejudiced by the deficient notice to appear. To prove actual prejudice, Bustillo-Romero must show that "'there was a reasonable likelihood that but for the errors complained of the defendant would not have been

objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). As the Supreme Court aptly noted, "common sense" tells us that "[c]onveying time-and-place information to a noncitizen is an essential function of a notice to appear." *Pereira*, 138 S. Ct. at 2115.

Bustillo-Romero argues only that the removal order is fundamentally unfair because it was rendered by an immigration court lacking jurisdiction to remove him, an argument this court expressly rejects. Under the facts of this case, it is undisputed that the notice to appear delivered to Bustillo-Romero does not comply with Section 1229(a) because it does not include time-and-place information required by the statute. Although there is no evidence that Bustillo-Romero received actual notice or a written notice of the time and place of the removal hearing, he concedes that he was present at his removal hearing. The court concludes that Bustillo-Romero was not deprived of the opportunity to be heard at a meaningful time and in a meaningful manner. The Certificate of Service for the Notice to Appear states that "[Bustillo-Romero] was provided oral notice in the Spanish language of the time and place of his . . . hearing." Removal proceedings took place on October 3, 2014, and "upon the basis of respondent's admissions" an immigration judge ordered Bustillo-Romero's removal by order dated October 3, 2014, stating that Bustillo-Romero waived his right to appeal and was personally served with a copy of the order on October 3, 2014. Although the Government may have, at the outset, violated Section 1229(a), the court concludes that the noncompliance does not rise to the level of a due-process violation that rendered the proceedings fundamentally unfair.

Moreover, Bustillo-Romero cannot show that he was actually prejudiced by the deficient notice to appear. To prove actual prejudice, Bustillo-Romero must show that "'there was a reasonable likelihood that but for the errors complained of the defendant would not have been

deported.'" *Lopez-Vasquez*, 227 F.3d at 485 (quoting *Benitez-Villafuerte*, 186 F.3d at 658–59). Bustillo-Romero argues that "prejudice is a simple matter" because he was ordered removed by an immigration judge who did not have authority to issue such an order. Bustillo-Romero does not make an argument that he was actually prejudiced and instead "preserves for further review whether he must show actual prejudice." Because the record does not include evidence of prejudice, the court concludes that Bustillo-Romero has failed to show actual prejudice by the deficient notice to appear when he did appear at his removal hearing. Therefore, Bustillo-Romero cannot meet the requirement of Section 1326(d)(3).

## IV. CONCLUSION

Having concluded that Bustillo-Romero's argument that the immigration court lacked jurisdiction to render its October 3, 2014 removal order is without merit, and that Bustillo-Romero has failed to meet any of the requirements of Section 1326(d) of Title 8 of the United States Code,

**IT IS ORDERED** that Defendant's Motion to Dismiss filed October 2, 2018 (Dkt. No. 21) is **DENIED**.

SIGNED this 29th day of January, 2019.

　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　LEE YEAKEL
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE